Good morning, I am pleased to report Bill Helfand, Sgt. John Clawson and John Delgado, and Officers Arthur Love and Matthew B. You might speak up Mr. Helfand, that mic is too low, the whole podium is too low. And Officer Adam Vasquez. While there is a number of contentions about what the video does not show, an issue to which I will speak later, what the video evidence of this incident demonstrates beyond reputation, indisputable, is that Mr. Lewis was handcuffed for no more than six minutes on this high risk traffic stop. And that's found at record 962 with the handcuffing occurring at 1805, that is 6.05pm and 35 seconds. And the handcuffing may have actually been shorter than six minutes, but it's definitely no longer than six minutes because there's a period where Mr. Lewis is walking around outside of the police car and it's unclear whether he's no longer handcuffed. But at 962, at 1810.56, again the same video, we see Mr. Lewis standing with his handcuffs off. So six minutes is the total time of which Mr. Lewis was handcuffed. And in light of this indisputable evidence, this alone, and the trial court's finding that the stop itself was not unconstitutional, which is a separate inquiry under the Fourth Amendment, then this case is most easily resolved by reference to the second element of qualified immunity on which the plaintiff has the burden of proof, and that is identifying clearly established law which would have told all reasonable police officers that handcuffing Mr. Lewis would be unconstitutional. Now, under Morrow v. Meacham and numerous other cases from this Court, it is clearly the plaintiff's burden to identify that clearly established law, and it is a heavy one according to this Court because, as the Court knows, Mr. Lewis's duty here, his burden, is to find cases that are significantly factually similar so that a, again, no reasonable police officer could have believed handcuffing Mr. Lewis was constitutional. And to be sure, the Court should, and actually under its own precedent is required, to disregard Mr. Lewis's citation to unpublished opinions and district court opinions because this Court has repeatedly held that non-presidential opinions within the circuit do not establish the clearly established law. Well, it is clearly established that the police can't use force on a suspect that's not resisting, that's clearly compliant, that's under control, so to speak. So was handcuffing even appropriate here? Well, it is clearly established that the Fourth Amendment prohibits excessive force, but respectfully, Your Honor, at the level at which Your Honor described it, that is that the police cannot use force against somebody who's compliant, yes, but the question then is what is the force? And this Court en banc in 1996 in Dunn v. Banks said handcuffing is not force. This Court has enunciated that handcuffing is not a use of force. But does it change the calculus if the suspect says, I've got a medical condition, I can't have anything on my left arm? No, it doesn't. Well, certainly not under this Court's clearly established law. That is what clearly Mr. Lewis is positing. He's asking the Court to change the circuit authority to say some people should not be handcuffed, even though that's not a use of force if, for example, the handcuff has the potential to cause injury. In fact, there's a fallacy in Mr. Lewis' very own argument. He says at his brief at page 37, and this is a quote, that the law, he believes, is, but he really is suggesting it should be, is, quote, the right to be free from handcuffing when an officer is unnoticed, it would cause pain and injury. Now, I don't think that would be consistent with a litany of Fifth Circuit cases that I'll come back to in just a moment, but to answer Your Honor's question, that's not the law in this circuit. That's not the law in any circuit. That is not the clearly established law. Now, if this Court determines that it's appropriate to change the law in this circuit, to come to that or move toward that. But we do have cases that say if you handcuff too tightly, you leave them in handcuffs for too long, if there's some sort of injury, there's the case about the shoulder, the shoulder surgery or shoulder dislocation or whatever, where the guy couldn't put his arms behind him, I can't remember the case name. But, I mean, we have cases that say handcuffing can be excessive, don't we? We have. The Fifth Circuit has two cases that have been identified where handcuffing can cause injury and therefore is excessive. But both of those cases are significantly different than the level of particularity that's required here. First of all, Mr. Lewis does not complain that he was handcuffed too tightly. Nowhere in the record will you find the complaint, I was handcuffed too tightly. Mr. Lewis posits that handcuffing have at all, again, this is at the opposition brief at page 37, that the right is to be free from handcuffing, not too tight, Your Honor, handcuffing when an officer is unnoticeable to cause pain or injury. Now, Your Honor is correct. The Court has two cases that have spoken to the issue of the potential for excessive force in the context of handcuffing too tight. One is DeVille v. Mercantile. Judge King was on the panel in that procuring case in 2009. But the problem with that case is that that case involved a non-high risk or what officers sometimes call a felony stop. That involved a traffic stop in which the evidence was undisputed that the traffic violator was generally compliant, but disagreeable with the officer when he pulled her from the car, slammed her against the car, causing a head contusion, and handcuffed her too tightly with evidence of risk neuropathy from a medical story. None of which the Court has here. The only evidence in this case of an injury, and I'm going to get to that when we get to the first element, is Mr. Lewis says that after he was handcuffed he needed his stent moved through some 15-minute procedure at the dialysis location. And it's just Mr. Lewis who says that. There's no doctor who says that has anything to do with the handcuff. I should point out, Your Honor, that while it is correct that the Court did find in DeVille v. Mercantile that the entire sequence of events evidence sufficient factual questions of excessive force so as to prohibit qualified immunity at the summary judgment stage, DeVille does not appear to have ever been cited by this Court, again, on the premise that is being offered here, which is handcuffing itself, not even the claim of handcuffing too tight is excessive force. The other case I think to which Your Honor is referring is the Heitchman case from 1998. In that case, the individual was handcuffed for four hours and asked to have the handcuffs loosened and was refused. But perhaps more importantly, that was a 12B6 case. The only thing the Court was deciding in that case was whether that might state a claim of excessive force, not whether the handcuffing itself was excessive force. And contrast that, Your Honor, with two other cases. One directly, I think, speaks to Your Honor, to Judge Wilson's question. In 2005 at Tarver v. Edna, this Court rejected the argument that a preexisting back condition was aggravated by handcuffing such that the handcuffing became a use of excessive force, which I think, I hope, answers Your Honor's question. What Mr. Lewis is saying here is exactly what Mr. Tarver said in Tarver v. City of Edna. I had a medical condition. You handcuffed me. By handcuffing me, you exacerbated my medical condition. The Court rejected that and found that that was not an exception to the well-settled law in this circuit, which is also evidenced in the Templeton v. Jaramillo case, and the Glenn v. City of Tyler case, in which the Court has held, quote, tight handcuffing alone does not present an excessive force claim. So even if the panel were inclined to indulge the argument that there are some cases that say that, one, they don't reach the level of particularity required under Westby from the Supreme Court in 2018, as the Court knows, there must be a high degree of particularity. Not just this is another handcuffing case. And this Court has held the same in Morgan v. Swanson in 2011, numerous other cases, but that's cited at page 51. That's the problem that Mr. Lewis presents. He finds cases of handcuffing in courts that have said that might be excessive force. But what he doesn't demonstrate is clearly established law. So if the panel were inclined to move the law in that direction and leaving aside, not for me, but more for the panel to decide whether that's something that can be done by a panel in this Court or the Court on bond, as of the time of this encounter, the law was not clearly established sufficient to show every officer that handcuffing Mr. Lewis was unconstitutional. And that's the plaintiff's burden, not just to find cases where handcuffing was held to be, under their own unique facts, unconstitutional. So you're not denying that the officers at some point knew he was a dialysis patient? Oh, the officer. Ms. Armstead told one of the officers she was a dialysis patient. Yeah, and was the stent visible? No, and that's the other thing I think that's important. Actually, Mr. Lewis did not testify that he ever told anyone he had a stent. The third time in deposition that he told, as the Court knows from the record, the first time Mr. Lewis said he didn't tell the officers anything about being a dialysis patient or having a problem being handcuffed. That's at Record 1032. The second time he said the only conversation he had with the officers was about the Dallas Cowboys, which in Houston might be an arrestable offense, but otherwise, that's at 1033. Only the third time in deposition at Record 1257, Mr. Lewis said he had a fistula, not a stent, a fistula. Now, to answer Judge King's question, both the stent, the actual stent, which he did have, and a fistula are subcutaneous. That is, they're not visible. I thought in the video there was like a bandage or some kind of strip down his arm. There's a bandage on his arm. Yes, there's a bandage on his arm. The bandage doesn't tell anybody what's underneath the bandage. And again, Mr. Lewis, the third time he testified about it, testified that it was a fistula. That is a mass of fatty growth under the skin. I can tell you that having been both an advanced EMT and a police officer in the New Orleans Police Department, there is not a reasonable police officer who would know that a dialysis patient cannot be handcuffed. And if that were the case, it was the plaintiff's burden to present that evidence in the summary judgment record, that reasonable officers would know that a dialysis patient cannot be handcuffed. In the brief time that I have left, let me turn to the first element of qualified immunity, simply because the court could also resolve the case on that fact, the fact that there's no excessive force here. Again, the court analyzes the first element under the law that says handcuffing alone is not excessive force. But even if the court were to find ample circuit precedent to the contrary, which I think is a dangerous idea to enunciate that handcuffing itself could be excessive force, but the court will decide in its own discretion whether that's appropriate. Only Officer Love handcuffed Mr. Lewis. And while I don't think Officer Love violated the Constitution, the other officers could not have violated the Constitution simply because Officer Love handcuffed them. That's the holding of this court in Medders v. Irma, which is cited in the brief. And repeatedly, the court must analyze each officer's claim of qualified immunity independently and merely being there while another officer handcuffs someone, which other officers should not expect to find to be excessive force, could not implicate those officers in a constitutional violation. No one heard Mr. Lewis say he even had a fist. And the appellee, to his credit, acknowledges that's not on the video. Well, it's not on the video, but that doesn't mean he didn't say it. He clearly is on the video when he's getting down on his knees. He's talking to the officer, and we just can't hear it. And then we've got two video feeds that are gone. They just weren't preserved. They say spoliation. I don't know if it's spoliation or not, but the district court held that for trial. But, I mean, those things could have indicated any number of things. We just don't know. So I don't know that that's really dispositive. I mean, the reality of that, I guess, is, I mean, if one of the other officers heard him say, I can't have anything on my arm, then does that officer have some sort of duty at that point to make sure he's not cuffed? Or, I mean, isn't that how the district court sort of looped all the officers in? Yes, but not appropriately. There's no clearly established law that says if an officer hears that somebody shouldn't be handcuffed, he or she is presently under a duty to warn the other officer who's going to handcuff them. That's just not in this circuit. That's not the clearly established law. And to answer Your Honor's question, you're correct to say we don't have all of the video evidence. I'm old enough to remember when we had no video evidence. So the fact that there's a lack of video evidence does not support the plaintiff's claim. May I finish to answer your question, Your Honor? Yes. Thank you, because I do want to point out, and I mentioned this at the outset, this court has addressed that issue, Judge Wilson. In 2023, in Argueta v. Girardi, the court expressly held that what's not on a video cannot create a fact question. You may recall in the Argueta case, the officer said he saw a gun. He fired and killed Mr. Argueta. Mr. Argueta is deceased. The district court denied summary judgment on qualified immunity because Judge Brown said he could not see the gun on the video, and therefore the jury might find there was no gun. This court reversed and rendered unqualified immunity, holding that what's not on a video cannot create a fact question to avoid summary judgment. Thank you. Thank you, sir. You have time for rebuttal. That went well. All righty. Ms. Bonds. Good morning, Your Honors, and may it please the court. I'm here today on behalf of the Plaintiff's Appellee, Mr. Michael Lewis, to ask you to uphold the district court's well-reasoned decision to deny qualified immunity and summary judgment to each of the defendants. I want to start by just addressing a couple of things my friend said during his argument, particularly that Mr. Lewis is trying to change the law here, that he is trying to ask this court to find that handcuffing is always excessive force or that handcuffing can be excessive force. But that is the law. That is why we're here. What's your best case? I believe our best case is DeVille. DeVille? DeVille versus Marcantel. In that case, my friend is right. That was a case where the facts were slightly different. It was a stop. In DeVille, though, we had a lot of factors that actually weighed in favor of the officer. Ms. DeVille was noncompliant. She wasn't getting out of the vehicle when she was asked to get out of the vehicle. She hadn't been patted down like Mr. Lewis had been patted down. There were a number of reasons for the officer to use the force that they used. But what's your best case that a suspect can put parameters around what the police are to do and not to do in terms of securing the scene or subduing a suspect, whatever? Your Honor, I don't believe that that's what we're arguing here. Well, it is going to be because that's a question in my mind. I think the plaintiff has to show that he gets out of the car, assuming this is disputed, but assume he says, I can't have anything on my left arm. Sure. Where's the case that says the police then cannot handcuff the suspect to secure the scene? Sure. I would say that that case is—that case law is reflected in Heitschmidt. In that case, that was a situation where the plaintiff was saying, the handcuffs are too tight, I'm getting injured. DeVille, she actually didn't provide any notice, but it was— But he didn't say it was too tight. He said, I can't have anything on my left arm. Actually, Your Honor, Mr. Lewis did say it was too tight. Defendants even say in their summary judgment brief, summarizing Mr. Lewis' testimony at Site 954, that it was too tight. Also, if you look at the appendix, Site 1139 through 1140 and 1169, consistently, Mr. Lewis' testimony is that the cuffs shouldn't have been applied in the first instance. But again, I'm going back to that very point. Sure. Where is the case that says a suspect can demand that cuffs not be applied and the police have to comply with that? Sure. I would actually point the court to Lando, which is a case where the plaintiff wasn't successful. That was, I believe, a 2020 case. But that was a situation in which the court actually found that there was no clearly established law requiring that the officers handcuff the plaintiff in the specific manner that he wanted to be handcuffed. But the court did acknowledge that the accommodation, that he could request an accommodation or that an accommodation would have been appropriate. It was a very narrow, pure hearing opinion that turned on the fact that some accommodation was appropriate, just not the one he was requesting. And Mr. Lewis wasn't requesting a specific accommodation. He just said he couldn't have anything on his wrist. But all he had was a bandage on his arm. He had more than that, Your Honor. I would believe he had his own statements. He had his statements that he couldn't be handcuffed, both when he was on his knees before the handcuffs were applied and his statements after the fact. You know, I've known a lot about dialysis over the years, but I never knew, I never knew that there would be a stent apparently in the wrist area where one is handcuffed. How do you, how are police officers supposed to infer that because one is on dialysis, one has that connection in a wrist? Sure, Your Honor. I mean, normally antibiotic stents are up here. Absolutely, Your Honor. I think it's a couple of factors here that Mr. Lewis shared. He shared himself through his own, you know, he testified to this, that he couldn't have anything on his wrist. He couldn't have anything on his arms. He said that in addition to the bandage being there, you have Ms. Armstead also saying this to the other officers on the scene. She didn't say that, though. She didn't say that. She said he's a dialysis patient. So I will point, Your Honor, to her testimony, which is at 1263. She said both to Defendant Newport that he was a dialysis patient and he couldn't have anything on his wrist. Then she said to Defendant Clawson at a later point, which I believe is at Appendix 963, that he was just a dialysis patient. And then later in the video, before Mr. Lewis' handcuffs were removed, which I believe 812 at Appendix number 963, he has a medical stamp. So she was talking throughout this entire time informing the other officers on the scene that he was a vulnerable individual, that he couldn't have anything on his wrist. Further, Your Honor, I would just point to the fact that these officers are trained on the fact that there are people that they can't handcuff, and when they get notice that someone is… Who are those? Is that in the record? That's in the record, Your Honor. Okay. And for what conditions are they trained? Sure. So they're not specifically trained on dialysis, but they are trained that if somebody indicates that they have a vulnerability, a medical vulnerability, that they're elderly, that they're pregnant, that's actually in Rosenberg Police Department's own policy. And I believe that is at the Appendix number 1213. And that's actually why Mr. Lewis lost on his Menal claims, because they have a policy telling them to do this. Then also if you look at the officer's own testimony, officers or defendants Delgado and Claussen and then Officer Cantu all testify that they were trained not to handcuff people if there was some indication that they would be handcuffed. I would also point, Your Honor, to the Texas Chiefs of Police Association. That's at 1215 and 1216. That an RPD, Rosenberg Police Department, is accredited through them. It provides for exception of application of handcuffs if there is a possibility that it will aggravate an injury due to age, infirmity, physical condition, or prior. So the officers had a lot of notice of this. Well, speaking of the officers, what do you do with the district courts? Sort of lumping them all in together and saying, I'm going to deny qualified immunity. The court didn't go officer by officer here in state and evaluate whether each one was entitled to it or not. Yeah, so I take your—I understand your question, Your Honor. I think the court did actually do a pretty decent job analyzing each individual officer's conduct. So if you look at the magistrate judge's report and recommendation, which is, you know, Judge Koonin just adopted it. If you look at 1721, he explains that Claussen and these courts were both directly told by Ms. Armstead, and that was their notice, and that's why they should have— why this was clearly established for them. 723 is Bosco's— But they didn't apply any force. I mean, only officer loved handcuffing. Yeah, and I think that's where Heitschmidt is instructive, Your Honor. So Heitschmidt was a case where numerous officers, notwithstanding the fact that the plaintiff didn't lead any bystander liability, were held liable for his excessive force handcuffing the plaintiff. And in Heitschmidt, it was both the officers that handcuffed him and the officers that left him in the handcuffs that were left in in order on his excessive force claims. So I think that there's precedent in this court that you don't have to be the officer that applies the handcuffs in order. But they left him in handcuffs. These officers didn't do that. We would disagree, Your Honor. They did, not for as long as Mr. Heitschmidt was in handcuffs. We're not arguing that. How long was he in handcuffs? Heitschmidt, I believe it was a couple of hours. Yeah, so this was six minutes, tops. Yeah. So which officer? I mean, where's the line? Was it three minutes? Was it four minutes? Was it five minutes when one of these officers should have, what, intervened and taken the cuffs off? So, Your Honor, I think that really goes to some of the disputes of fact about the scene security. But where's your case that suggests that would be a material disputed fact? If I understand your question, Your Honor, where's the case that says it would be a material disputed fact about how long an officer in handcuffs was? Well, about an officer who didn't apply the force to have a duty to then remove the cuff because they were advised and to do so in apparently less than six minutes. So, you know, Your Honor, that's a good question. I don't think that there is any specific case on that point, but I think there's a couple of cases that clearly establish this when read together. Heitschmidt stands for the proposition that you can be liable for failing to remove handcuffs. DeVille and DeVille. Well, over a couple of hours. Yes. Sure, Your Honor. 20 times the amount of time that was at issue here. Certainly, Your Honor. But I think you should also look at DeVille. And in DeVille, there was no analysis of how long the duration of the handcuff and how long she was left in handcuffs. And that isn't always a factor in the court's analysis. I would also point, Your Honor, to a couple of disputes of fact that I think are relevant in determining, you know, what the officer should have done. A big part of the defendant's argument in this case is that there was not a secure scene, that they had a lot of urgency to do a protective sweep of the vehicle. But if you look at each individual officer, you know, let's start with Defendant Claussen, who was on the driver's side of the vehicle. There's about three minutes after he, or excuse me, Your Honor, two minutes after he is informed by Ms. Armstead directly that he's a dialysis patient, where he's not doing anything. He's just standing between the other two officers. Well, they were securing the car, and they were about to do a sweep of the car. I mean, from the video I've seen, they had guns pulled. They were on the car. They were training lights on the car. And then they went up, what, three or four, two, three, four of them went up to the car to do a protective sweep of the car. Absolutely, Your Honor. I mean, that's what's going on while the officers are standing around doing that.  Just to clarify, Your Honor, Defendant Delgado and Defendant Newport, they were absolutely securing the car. Did they have some security responsibilities that would have precluded them from assisting Mr. Lewis during that time? Absolutely. Defendant Clawson, what is he doing during that time? He's walking around. He's going back to talk to Ms. Armstead about something the officers had already heard from her. He's not doing anything. Like, really not doing anything. So the other officers definitely then are entitled to qualified immunity, because they are doing other things. How in the world could they then stop what they were doing to go back and release? Yeah, sure, Your Honor. I think that goes to the number of officers on the scene, which is a relevant fact in the totality of the circumstances that you have to look at these Fourth Amendment cases under. We have five officers on the scene. We have one officer who's wandering around, Vasquez, who's done isn't trained on the vehicle the entire time. Lewis, for two, or Defendant Love, for two minutes, who's doing nothing other than securing Mr. Lewis. And so, and also you have the fact that Delgado, we're not making any supervisory liability claims here, but Delgado, who's the supervisor on the scene, who at any point could have directed another officer to do something. So, if you look at each individual officer's scene security responsibilities, and along with the number of officers on the scene, along with the fact that this, you know, that these officers kind of already got a mulligan for stopping the wrong car, and detaining the wrong individuals in the first instance, I think all of those factors go in favor of Mr. Lewis here. And, Your Honor, I would also like to just point, or Your Honors, I'd like to just point you to a couple of other cases that I think are relevant here. So, there are a couple of cases in which the excessive force claim wasn't found because there was a lack of an injury. Tarver City, Tarver, Tyler, excuse me, Glenversa City, and Tyler Gorski, these are all cases where they're, you know, where the court recognized that overtight handcuffing or handcuffing that causes an injury would be sufficient to sustain an excessive force claim, but there was inadequate, was just an insufficient injury. And that's where most cases go out. Mr. Lewis wouldn't have had a claim if he hadn't been injured. And I want to respond to something that my friend said earlier, that he had a quick 15 minute, you know, procedure, and that it's just his statement. We produced copious medical records from the Greenhouse Vascular Center about Mr. Lewis's treatments that happened days after he was handcuffed. It was a 45 minute procedure if you look at Mr. Lewis's testimony at 1257 through 1258 of the appendix. And so this wasn't, this isn't just kind of Mr. Lewis's word about it. It wasn't a quick procedure. He was severely injured, and that's the only reason we're here. That's the only reason we're prisoning this claim. And this is exactly the line of cases that this court has recognized and other courts have recognized why handcuffing can constitute a success. Where does the video indicate that he cried out in pain or reacted, you know, with some sort of visible indication that he had been injured? Sure, Your Honor. So Mr., I don't think we ever allege that Mr. Lewis cried out in pain. If you look at 607 and 608, 607 to 608 of 962 of the appendix, that's Defendant Boskis' video, he does say he wins as he's walking by Defendant Boskis and as he's going back to the vehicle. So he does make some indications that he's uncomfortable. However, you know, we never alleged that he was, you know, screaming out, crying out, making a big fuss. And I think that Gorski is relevant here because in Gorski, the plaintiff also didn't scream out on the video. He was injured. He, you know, and the court actually made a factual finding like, yes, he wasn't screaming out, but the fact that he had an injury was sufficient to sustain an excessive force claim. I also would say, Your Honor, that I think it sets, you know, every know-your-right treatment that you do for somebody when they interact with the police is be compliant, be polite, do everything you can to do to make their job easy. And so if we want to, you know, create a precedent that in order to have an excessive force claim, a plaintiff has to act out and scream and, you know, complain, I think that that's a little, that's going to make your officer's jobs harder. Well, that's a reasonable, very reasonable observation. But on the other hand, you're, you know, again, I don't see how police officers obviously knew that a dialysis patient has a stint in his wrist that should prevent handcuffing. And so the only way they would know that something is really amiss is, you know, if he was clasping his hands indicating in some physical way. Yeah, I agree. I understand your statement, Your Honor. And I think it really comes back to what Mr. Lewis told the officers. And I know my friend is, you know, making the argument that what was said, what the notice was, is immaterial here. But the district court was right that it is material. And that's why there's been so much being spilled at the summary judgment stage and here, and even quite a bit of argument time about what Mr. Lewis said to Dependent Love and who heard it and what Ms. Armstead said to the other dependents and who heard it. And so I think that notice is really relevant here. All right. All right, Your Honors. If there are any further questions, I will just wrap up quickly. The only other thing I'll say is, has the Supreme Court ever held that excessive handcuffing, that handcuffing can constitute excess force? Your Honor, I'm not aware of any Supreme Court case withholding that. But I would say that there is a robust consensus of authority from other sister circuits in which... Well, I think we're not supposed to look at other circuits, but I'm not... Yeah, Your Honor, I believe Morgan v. Swanson, a 2011 case, kind of laid out the different ways in which this Court can find laws clearly established. Well, but that's when we don't have any law here. We've got oodles of law about excessive force claims. Your Honor, I would agree that I think there's a lot of case law here on excessive force claims related to handcuffing. The Court has actually considered a number of these cases. As I mentioned, most of them go out on lack of injury. I do think that most excessive force claims around handcuffing are insufficient based on injury. Mr. Lewis is pretty much an outlier and an exception. But I do believe, Your Honor, that arguing in the alternative, I believe there is Fifth Circuit precedent that establishes this, but I do also believe that every other circuit that has considered this question has found that handcuffing can be excessive force. As we identified in our brief, a number of those cases are very, very similar to Mr. Lewis's, particularly the Ninth Circuit case, Alexander v. City of Los Angeles, where a dialysis patient was stopped due to a felony stop, was placed in handcuffs, and sustained an injury to his medical stand. And that was another situation where they hadn't secured the car, where they were still trying to figure out who the robbery suspects were. It couldn't be more similar. So there are other cases, too. I lost the train of thought. What case are you describing? That was Alexander v. City of Los Angeles. Alexander v. what? City of Los Angeles. Oh, L.A., okay. And the Sixth Circuit had another similar case, Portwright v. City of Battle Creek. In that case, there was a man who was threatening to shoot people, was waving a gun around at a hotel. They hadn't located the weapon. They hadn't secured the scene yet. He had not a dialysis injury, Your Honor, but a rotator cuff injury. Said he couldn't be handcuffed, was handcuffed, sustained an injury. His excessive force claim was allowed to proceed. Cortez v. McCauley, a Tenth Circuit case where a felony investigation was happening. Those are in your brief. Those are all there. Right. I have to read it. That's okay. All righty. I guess we have no other questions. Okay. Well, Your Honors, I want to thank you for your time, and I would just reiterate that I think the district court got this right. I think Judge Hayning got this right, that there are material disputes of facts. These facts have been proven to be material based on the amount of time we've spent talking about them. What notice defendant Love received, what notice the other defendants received. And so because these material disputes of facts were the basis for the summary judgment finding, we would argue in the first instance that there potentially is a jurisdiction to hear this case. Even if the court finds it has jurisdiction, we believe that affirmance would be appropriate because the court did analyze the clearly established law appropriately here. Thank you. All right. Thank you. Mr. Helfand. Thank you, Your Honor. The appellee says that he's not proposing to change the law if the law is clearly established in this circuit. But again, his recitation of what the clearly established law is, and therefore the burden he sets for himself to avoid the presumption of qualified immunity because that's what it is, is set out at the appellee's brief at page 37, quote, the right to be free from handcuffing when an officer was on notice it would cause pain and injury. So the burden under Morrow v. Meacham and ample case law from this court is to find a case that says something like that. DeVille does not say that. DeVille does not say that. And notably, DeVille is a 2009 case. Since then, in Templeton v. Jaramillo in 2022, in Tarver v. Edna in 2005, and in Smith v. Heap in 2022, this court has repeatedly held handcuffing is not excessive force. And in Tarver, even where it aggravates a preexisting injury, which is what Mr. Lewis is positing here, I should point out in the Smith v. Heap case, that's the other problem with this citation, with the best case for Mr. Lewis being DeVille. It's not the best case for what he's proposing because in DeVille, it was a routine traffic stop. Here, it is a high-risk stop. The trial court found the use of the high-risk stop technique was appropriate under the circumstances. And the circumstances were that there was a belief that this vehicle might have someone in it with a gun who had pointed the gun at kids. It turned out not to be the case, thankfully. However, the factual scenario there is not the facts in DeVille, but rather the facts in Smith v. Heap. In Smith v. Heap, Mr. Smith had actually pointed a gun at someone on the tollway. The constables were called. They pulled him over and did a felony stop just like this one in what Judge Smith, writing for the court, explained was a textbook felony stop, which includes handcuffing the suspect until the circumstances are clear. So Mr. Lewis simply fails in his answer to the court's question, what is your best case? There is no case that says handcuffing an individual itself may be a constitutional violation if they have some medical condition that can create a problem. I should also point out, and this is in the briefing, there's no evidence of an injury, that is, a stent problem, directly and only from the handcuffing, which is required under Dunn v. Dank and numerous other opinions. The only thing Mr. Lewis cites is at Record 1258, which is his own deposition testimony in which he says, I went in and they had to maneuver the stent with a needle and it hurt. Well, that's sufficient. I don't believe that that's the medical testimony demonstrating directly and only, Your Honor, because... Well, you know, if I mean, suppose they shot me in the arm and I went to the hospital and they removed the bullet. I mean, why isn't... Because the stent may have moved for all sorts of reasons. Well, it could have, it could have. But I don't want to dwell on that. No, I don't think you need to dwell on that. Thank you. It is in the briefing. I want to finish by addressing also Judge Wilson's question. The whole, all the officers were there and could have done something about it argument is exactly what this Court rejected in Metters v. Irmel. In Metters v. Irmel, District Court tonight, qualified immunity, every officer in this Court held each officer's claim of qualified immunity must be determined independently, which means, and again, I think this answers Judge Wilson's question. Was that argued to the District Court? I'm sorry? Was it, was that argued to the District Court? Yeah, oh yes, Metters was cited below. Yeah, well, I'm just surprised that Judge Haynen didn't catch that. I was surprised as well, Your Honor, because I think this is glaring in that the plaintiff's burden to avoid summary judgment as to those other officers, again, is not just to show that they didn't know that there might be an injury here, but also that there was some clearly established law that told the officers that they had a duty to, as Mr. Lewis is positing, unhandcuff someone during a high-risk stop. I don't think that the Court can find that anywhere in the law. And lastly, let me give this analogy to the Court, because I think it also answers the question Judge Wilson posited, my friend. This Court, in ADA cases, has held that at the scene of a stop, until the scene is determined secure by the officers, the officers need not accommodate an actual known disability. So here, the analogy holds as well. The officers have to exercise safety first, and then accommodation second. I would reflect on this a bit in the course of reversing renderings. Thank you for your time. All right, sir. Thank you.